# C. N. O & T. P. Ry. Co. v. Wilson's Adm'r.

June 15, 1943.

Tye & Siler, Bradley & Bradley, and Carl M. Jacobs for appellant.

J. C. Bird and R. L. Pope for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Reversing.

The appeal is from a judgment in the amount of $2,000 for damages for the death of Emby N. Wilson and the destruction of his truck, resulting from a collision with a fast passenger train operated by appellant at a grade crossing in Scott county, Tennessee. The accident occurred at approximately 2 A. M. on Sunday, December 7, 1941. Deceased, in the company of his helper, Ezra Anderson, had worked until 8:30 P. M. Saturday night. The two commenced drinking after they finished their work, and, in company of others, continued to drink whiskey and beer until shortly before the accident.

Parting company with the rest of their companions, Wilson, Anderson, and a girl named Josie Bryant turned off of U. S. Highway No. 27 onto a country road, crossed the tracks of the railroad company, and parked the truck. Wilson asked Anderson to leave for the ostensible purpose of purchasing some whiskey. Anderson remained away 20 or 30 minutes, returned to the truck and tried to open the right hand door, but, finding it locked, again departed and stationed himself on the main highway at its intersection with the country road. The road is in the shape of an arc crossing the railroad in two places, commencing and ending at the highway. Anderson saw the truck move from its parking place in the direction of

the second crossing but lost sight of it before it reached the crossing. In approaching the crossing the truck was traveling in an easterly direction. To the north of the approach there was a grove or thicket of trees, completely obstructing the view to Wilson's left until he reached a point 15 or 20 feet west of the tracks of the railroad. For a mile north of the crossing the railroad is perfectly straight and passenger train No. 1 belonging to appellant was traveling southward at a speed rated between 65 and 70 miles per hour. The truck was traveling between 20 and 25 miles per hour. The engineer saw the lights of the truck as it passed from behind the thicket at which time the engine was 115 to 120 feet north of the crossing. He immediately reached for the brakes but the collision occurred before or almost simultaneous with their application. The engine was equipped with a strong headlight which was burning at the time of the accident. The above facts are not contradicted. The only conflicting evidence is concerning the question of whether the engineer blew the whistle for the crossing which was known to be dangerous, but which question, as will hereinafter be seen, is not material to a decision of the case.

The parties pleaded the law of Tennessee and since such pleadings met the requirements of KRS 422.084, the common law and the statutes of the state of Tennessee, of which we will take judicial notice under the provisions of KRS 422.081, must govern the rights of the parties. The court submitted the case to the jury upon the ground of negligence of the defendant in failing to sound a warning signal after the engineer observed the truck obstructing the railroad, and in respect to the negligence of the defendant under the common law of the state of Tennessee. A contributory negligence instruction was given in respect to each count.

Section 2628, subsection 4, of the Tennessee Code provides:

"Every railroad company shall keep the engineer, fireman or some other person upon the locomotive, always upon the lookout ahead; and when any person, animal, or other obstruction appears upon the road, the alarm whistle shall be sounded, the brakes put down, and every possible means employed to stop the train and prevent an accident."

Section 2629 of the Code provides:

"Every railroad company that fails to observe the above precautions, or cause them to be observed by its agents and servants, shall be responsible for all damages to person or property occasioned by, or resulting from, any accident or collision that may occur."

The effect of contributory negligence under the law of Tennessee is different in respect to a statutory count and a common law count of a declaration. The negligence of plaintiff which contributes to the defendant's negligence in failing to observe the duties imposed upon it by the statutes recited above does not bar the right of recovery, but must be considered in mitigation of damages; while the negligence of the plaintiff contributing to defendant's negligence in failing to observe the rules of the common law of Tennessee is an absolute bar to the right of recovery, if such contributory negligence continued to operate concurrently to the moment of the accident. That is to say, under the common law, plaintiff's negligence is a bar to his right to recover unless the negligence of the defendant occurs subsequently to that of the plaintiff, in which event, the last clear chance doctrine will be invoked. The rule in respect to negligence of the plaintiff contributing to the statutory negligence of the defendant has been expressed by the Supreme Court of Tennessee in the following language:

"Although the railroad may be and is liable because of the failure to comply with the statutes, yet the contributory negligence of the party suing will go in reduction of damages. And this we hold to be a fixed rule of law—one of substantial right— and which the railroad company has the right to have applied if the jury should find contributory negligence upon the part of the party suing. * * *

"If the jury found that the plaintiff was guilty of contributory negligence at the time of the accident, then it was their duty to look to it in assessing his damages, and augment or diminish the same according as they found his negligence to be slight or gross. Railroad Co. v. Martin, 113 Tenn. 266, 87 S. W. 418, 421.

The rule in respect to the common law is aptly stated by the Court in Grigsby & Co. v. Bratton, 128 Tenn. 597, 598, 163 S. W. 804, 806:

"If, notwithstanding defendant's fault, plaintiff's negligence so continued and contributed to the accident, then either the negligence of the parties was concurrent, or else the plaintiff himself is to be held as having had the opportunity of avoiding the injury, and his contribution is, in either event, not remote in the chain of causation. * * *

"Where the plaintiff and defendant are thus guilty of acts of negligence which together constitute the proximate cause of the injury, then the negligence of plaintiff, however slight, bars a recovery."

We will consider appellant's contention that the case should not have been submitted to the jury, first, in respect to statutory negligence, and, second, in respect to common law negligence. It is conceded that no warning signal was sounded after the engineer saw the truck obstructing the path of his train. Appellee contends that under the provisions of sections 2628, subsection 4, and 2629, supra, of the Tennessee Code, the failure of the engineer to give a signal of the approaching train after an obstruction appeared in the path of the train fixes liability upon the railroad company for all injuries resulting from a collision, irrespective of whether the signal could serve as a warning to the occupants of the vehicle obstructing the road, and irrespective of whether the signal could serve to avert the accident. No duty rests upon the engineer or other members of the crew to comply with the requirements of the statute until an obstruction appears on the track in front of the moving train, or so near the track that it could be struck by the train. Louisville & N. Railroad Co. v. Frakes, 11 Tenn. App. 593, 617. If the appearance is so sudden and at a time that the train crew could not thereafter, by the greatest possible diligence, have performed the acts of precaution required by the statute it would be an absurdity to hold that non-compliance was negligence for which recovery may be had. As said in Railroad v. Thompson, 101 Tenn. 197, 47 S. W. 151, 152:

"The law does not require impossibilities, nor impose penalties for not doing what could not have been done. The impossibility of observance in a case like that before the court excuses from liability for non-observance."

In Louisville & N. Railroad Co. v. Ross & D. B. Anderson Co., 2 Tenn. App. 384, it is said:

"If the person, animal or other obstruction appears so suddenly on the track that there is no time to comply with the statute, then the defendant company is not liable."

To the same effect is Louisville & N. R. Co. v. Frakes, supra. There are many other cases so holding but it would unnecessarily burden the opinion to cite them. In the instant case the uncontradicted testimony shows that the engine was not more than 120 feet away from the point of impact when the engineer observed the approach of Wilson's truck. It is conceded by both parties that at the time the engineer discovered Wilson's peril the train was traveling at a speed of not less than 65 miles per hour. At that rate it was covering approximately 97½ feet per second. The engineer could not possibly have placed his hand on the whistle cord in sufficient time to produce a signal which would warn the deceased of the approach of the train. He did apply the brakes but he did not have sufficient time to compel their application previous to the crash. The appearance of the truck was so sudden and the train was so near that there was nothing he could do to avert the accident or in any wise comply with the statute in an effective manner. We are therefore of the opinion under the authorities recited above that the court should have sustained appellant's motion for a peremptory instruction on that phase of the case.

We will brush aside the contention that appellee did not plead the common law of Tennessee so as to authorize the case to be submitted to the jury on the second count, since we are of the opinion that, if it has been properly pleaded, appellee's decedent was so guilty of contributory negligence as to constitute a bar to appellee's right to recover under the common law. Where plaintiff and defendant are both guilty of negligent acts which together constitute the proximate cause of the injuries, no recovery may be had. Grigsby & Co. v. Bratton, supra; Tennessee Central Ry. v. Ledbetter, 159 Tenn. 404, 19 S. W. (2d) 258. The decisions of the Supreme Court of Tennessee clearly recite the common law of that state in respect to the duty of the driver of a motor vehicle to stop, look, and listen before crossing a railroad track. The rule is best stated in Louisville & N. Railroad Co. v. Ross & D. B. Anderson Co., 2 Tenn. App. 384, 395, where it is said:

"Ordinarily, it is an absolute duty to look and. listen, but not always. It is his duty to look, and if he cannot see, then he should listen. If he cannot see or hear, it is his duty to stop, if by stopping he can the better look and listen. To look and listen for cars is a positive fixed duty, when by such precautions they may be seen or heard and in such cases, the failure of observance will bar recovery. Where, however, in exceptional cases because of conditions. not created by nor under the control of the traveler, this precaution would not apprise one of danger, their exercise may be excused. * * *

"The point in the exceptional cases, is that conditions arise not created by or under the control of the traveler, where an ordinary prudent person by reason of this condition could not and would not anticipate the danger."

Other cases so holding are Stem v. Nashville Interurban Ry., 142 Tenn. 494, 221 S. W. 192; Louisville & N. R. Co. v. May, 5 Tenn. App. 100, 103; Louisville & N. R. R. Co. v. Anderson, 159 Tenn. 55, 15 S. W. (2d) 753; Tennessee Central Ry. v. Ledbetter, supra. Then it was. the duty of Wilson to look, and, if he did not see, to listen, and, if he neither saw nor heard, it was his duty to stop, that he might the better look and listen. The evidence shows definitely that he did not stop at a place where he could see. After he passed the thicket he had at least 15 feet to travel before reaching the tracks where he could have looked for the approaching train. The main line tracks at this point consist of a northbound track and a southbound track. He knew the country well. He knew the thicket was there because he had been over the road many times. Since he was approaching the southbound track he knew the direction in which to look for an approaching train on the track he first would be required to cross. Had he looked in the direction of the train it is inconceivable that he could not have seen the brilliant headlight. If he was prevented from hearing the train because of other noise, such fact increased his duty to observe the precaution of looking or of stopping that he might the better look and listen. His negligence in not looking, not listening, and not stopping continued from the time the duty was imposed upon him until the moment of the collision and was so simultaneous with the negligence of the defendant, if any, that it necessarily contributed to, if it was not the sole cause of, his death

and the destruction of his truck. Although there was evidence to the effect that the train was coasting down a grade and not making as much noise as a train does under full steam, the person who so testified (Anderson) was a half mile farther away than Wilson and heard the train when it appeared a mile north of the accident. Since the facts in this case are so similar to those in Cincinnati, N. O. & T. P. R. Co., v. Garrett, Tenn. App., 154 S. W. (2d) 435, 439, and since our decision must be guided by the decisions of the Supreme Court of Tennessee, we will quote at length from the opinion in that case:

"We now come to the question of any evidence to support the verdict. There is sufficient conflict in the evidence to carry the case to the jury upon the Railway Company's negligence in creating an extra hazard by stacking or permitting the stacking of lumber so near its track and the crossing as to obscure the view and to require an additional warning as a protection against the obstruction upon which to submit the question to the jury. The view was not entirely obstructed for there was a space of 10 to 15 feet from which the deceased could see the approaching train and could have stopped his car before entering upon the track; and if there was no train in sight, the view was of sufficient length to permit him to pass over the track in safety. The deceased was a traveling salesman covering this territory regularly and familiar with the crossing and the surroundings. He knew of the danger, but notwithstanding this drove his automobile slowly over this 10 or 15-foot space, affording him a view of the approaching train, and without looking or attempting to stop he drove immediately upon the track in front of the fast approaching train at a time when nothing could be done to protect him. Was he guilty of such contributory negligence as bars the common law action?

"At this point the highway crosses the main lines of the Railway Company, which is double tracks with two side tracks, making it necessary to cross four lines of tracks. The west or south bound track upon which the deceased was killed was the first track, so designated by us; the second track was a siding, and the third, the north bound track, and the fourth another siding. There were islands

of safety between these tracks. The view at the crossing was obstructed both to the north and to the south and the crossing was in a dip so that trains approach the crossing down grade from each direction. This was a much used crossing, but the deceased was familiar with the lay of the land and that the company operated its fast trains over this track. He knew of the care required in entering upon the tracks to guard against the danger for his protection. * * *

"This evidence is not in conflict with any other. It is the plaintiff's evidence, and it becomes a question of law for the court to determine if the deceased was guilty of contributory negligence, barring his right to recover. He was absorbed in thought apparently, and took no precautions whatever for his own safety; he left an island of safety and drove upon the track immediately in front of a fast approaching train, without looking or attempting to stop before he entered upon the track, seemingly unaware of his danger. What facts are there to excuse him from this negligent conduct, making the question of his contributory negligence one for the jury? His absorption in thought cannot excuse him, since it was not involuntarily induced by circumstances over which he had no control. He was driving slowly and could have stopped, or at least attempted to stop before entering upon the track after his vision of the approaching train became unobstructed. It is negligence for one to rely absolutely upon a warning given by the approaching train as a means of protection when entering upon a track, and if he relied upon the absence of a warning without using his faculty of sight and of due caution before entering upon the track, he was negligent, notwithstanding no warning was given. It is argued that he first looked to the south to see if the train was approaching from that direction and when he looked to the north that it was too late. The plaintiff's witness says he did not appear to look in either direction, but assuming that he did look first to the south, this was a negligent act. His view was obstructed to the south until he had passed over the south bound track and had entered upon the siding between the south and north bound tracks, and he was in no immediate danger from a train

traveling north, since he had to pass over the south bound track and the siding before coming into the sweep of the track going north. The deceased was familiar with this condition, and knew that his immediate attention should be directed to the north as the train was traveling south upon the track he was first to enter. The crossing may be called a blind crossing, especially to a stranger, for it was an obstructed crossing, but he was afforded an island of safety before entering upon the track and he was traveling at such a low speed he could have availed himself of it if he had only looked. The court is of the opinion from the undisputed facts that he was guilty of such contributory negligence as bars the common law right of recovery.''

This leads us to the inevitable conclusion that Wilson was not observing his duties in crossing the track and that his failure to observe these duties under the opinions recited above constituted contributory negligence as a matter of law. Whether his negligence was caused by unusual interest in his companion, intoxication, or other causes need not be determined.

It is finally insisted that the defendant is liable under the doctrine of last clear chance which is ''The plaintiff should recover, notwithstanding his own negligence exposed him to the risk of injury, if the injury of which he complains was proximately caused by the omission of the defendant, after having such notice of the plaintiff's danger as would put a prudent man upon his guard, to use ordinary care for the purpose of avoiding such injury.'' Mann Brothers v. City of Henderson, 154 Ky. 154, 156 S. W. 1063, 1066. It is obvious from what we have said concerning the failure of defendant's servants to sound a warning signal after discovering the obstruction in its tracks that the doctrine of last clear chance cannot be invoked under the facts of this case, because the engineer did not have time to do any act imposed on him by the doctrine of last clear chance. Had the case been tried under the law as it prevails in this state, the decision might have been different; but under the law prevailing in Tennessee the court erred in not sustaining appellant's motion for a peremptory instruction at the close of all the evidence.

The judgment is reversed for proceedings consistent with this opinion.